■ Mary Durney, as Executrix of Arthur Hudson, Deceased, Respondent, v Alyssa Terk et al., Defendants, and Lenox Hill Hospital, Appellant. [840 NYS2d 30]—

Order, Supreme Court, New York County (Alice Schlesinger, J.), entered December 28, 2005, which denied Lenox Hill's motion to set aside the verdict pursuant to CPLR 4404 (a), unanimously reversed, on the law, without costs, the motion granted and the complaint dismissed. The Clerk is directed to enter judgment accordingly.

Plaintiff, as the executrix of the estate of her husband, decedent Arthur Hudson, brought this action for his wrongful death against Lenox Hill Hospital, two doctors, and a medical

student. Defendants treated decedent as an inpatient for major depression and suicidal ideation between March 2 and March 8, 2001. Upon decedent's discharge from Lenox Hill, he was scheduled to start an intensive outpatient program at St. Vincent's hospital on March 15, 2001, the first available date for an intake appointment.

Before leaving Lenox Hill and starting the program at St. Vincent's, decedent promised to take the medications which had been prescribed to him, and to "contract for safety."* On March 14, 2001, he committed suicide.

A trial was held and the jury found that Lenox Hill Hospital, through its discharge team, had not departed from accepted standards of psychiatric care in formulating the discharge plan for decedent. The jury found, however, that defendant's discharge team had departed from accepted standards of psychiatric care by failing carefully and competently to evaluate decedent following the discussion of the contract for safety at the March 8, 2001 discharge meeting. They concluded that such departure deprived decedent of a substantial possibility of avoiding suicide on March 14, 2001. Specifically, plaintiff testified that during the March 8, 2001 meeting, decedent "hesitated" when asked whether he would contract for safety with her. In its verdict, the jury found that the failure to reevaluate the discharge plan following decedent's "hesitation" constituted a deviation from accepted medical practice. We disagree.

A medical provider may not be held liable for a mere error in professional judgment. For liability to ensue, plaintiff must show that the provider's treatment decision was "something less than a professional medical determination" (see Ibguy v State of New York, 261 AD2d 510 [1999], lv denied 93 NY2d 816 [1999], quoting Darren v Safier, 207 AD2d 473, 474 [1994]). The mere fact that plaintiff's expert may have chosen a different course of treatment, without more, is insufficient to sustain a prima facie case of medical malpractice (id.) "When a psychiatrist chooses a course of treatment, within a range of medically accepted choices, for a patient after a proper examination and evaluation, the doctrine of professional medical judgment will insulate such psychiatrist from liability" (O'Sullivan v Presbyterian Hosp. in City of N.Y. at Columbia Presbyt. Med. Ctr., 217 AD2d 98, 100 [1995]). However, the line between the proper exercise of judgment and deviation from accepted practice can be difficult to delineate, particularly in cases involving psychiatric treatment (id.). As this Court observed in a case with similar

---

* By "contracting for safety", decedent agreed to advise another person if his suicidal ideations returned or if he began to feel unsafe.

facts: "The prediction of the future course of a mental illness is a professional judgment of high responsibility and in some instances it involves a measure of calculated risk. If a liability were imposed on the physician or the State each time the prediction of future course of mental disease was wrong, few releases would ever be made and the hope of recovery and rehabilitation of a vast number of patients would be impeded and frustrated." (*Centeno v City of New York*, 48 AD2d 812, 813 [1975], *affd* 40 NY2d 932 [1976].)

While we are sympathetic to plaintiff's situation, there is no view of the trial evidence which would support a claim that defendants' actions constituted a departure from accepted psychiatric practice. Plaintiff's expert testified that decedent had been properly diagnosed with a major depressive disorder, that the accepted psychiatric history had been taken, and that decedent's in-patient treatment was proper. Further, the expert said that the intensive treatment program selected for decedent was the type of program he would have chosen, and that the medications prescribed plaintiff were appropriate. Plaintiff's expert did not negate any of the factors upon which the decision to discharge decedent had been based (*see Topel v Long Is. Jewish Med. Ctr.*, 55 NY2d 682 [1981]).

Nor did plaintiff's expert demonstrate that defendants' evaluation and treatment decisions deviated from the proper standard of care (*cf. O'Sullivan v Presbyterian Hosp. in City of N.Y. at Columbia Presbyt. Med. Ctr.*, 217 AD2d 98 [1995] [prima facie case of psychiatric malpractice where defendants committed numerous deviations, including failure to diagnose major depression, formulate a proper treatment plan, order physical examination, assign a primary therapist and prescribe appropriate medication]).

While plaintiff's expert testified that decedent's hesitation at the discharge meeting required "exploration," he failed to connect this inaction to decedent's subsequent suicide. For example, there was no testimony that the "hesitation" should have lead to prescription of a different course of treatment. Moreover, plaintiff testified that she never communicated to any hospital personnel that she had observed her husband hesitate. Nor is there any evidence in the record that anyone else independently observed it. Finally, plaintiff concedes that it would require conjecture to attach significance to decedent's hesitation alone. In the circumstances, defendant's motion for a judgment notwithstanding the verdict was improperly denied.

We have considered and rejected the plaintiff's additional arguments. Concur—Mazzarelli, J.P., Marlow, McGuire and Kavanagh, JJ.